IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JEFFREY MARK COLE, | | |
| Petitioner, | | 2: 09 - cv - 2549 - LKK TJB |
| vs. | | |
| ANTHONY HEDGPETH, Warden | | |
| Respondent. | | <u>FINDINGS AND RECOMMENDATIONS</u> |

## I. INTRODUCTION

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a sentence of twelve years after being convicted of three counts of lewd and lascivious act on a child under the age of fourteen. Petitioner raises two claims in this federal habeas petition; specifically: (1) improper admission of evidence when he told the detective that he possessed drugs with the intent to sell ("Claim I"); and (2) improper admission of evidence that Petitioner used methamphetamine ("Claim II"). For the following reasons, the habeas petition should be denied.

## II.  FACTUAL BACKGROUND[1]

[M], the victim in this case, was born in May 1990.  He lived with his mother Denise, his father Lloyd, and his younger brother [D].  Lloyd worked as a heavy equipment operator with defendant who came over on weekends to socialize with the family.  Defendant was nice to [M] and [D] and brought them gifts.  Denise and Lloyd separated in 1999.  Lloyd previously had been diagnosed with cirrhosis of the liver and died in 2002.

Denise had a good relationship with defendant and considered him a trusted friend.  On April 22, 2003, she and her two sons moved into a house with defendant in Antelope, Sacramento County.  On one occasion while the foursome were living in that house, [M] and defendant were watching a movie.  They were sitting on the couch under a blanket and defendant's legs were draped over [M]'s lap.  [M]'s hands were on the outside of the blanket and he accidentally touched defendant's penis.  [M] was embarrassed, but defendant began rubbing [M]'s penis under the blanket.  Although [M] was "shocked," he did not say anything to defendant.

After a short while, it became apparent the living arrangement did not work, so in July, Denise moved to a separate apartment with her two sons and defendant moved into his own apartment although he continued to call Denise's apartment.

One weekend while [M] was 13 years old, defendant came to visit his family and [M] asked if he could go to defendant's apartment.  Defendant often bought [D] clothes and compact discs (CD) and [M] was hoping defendant would buy him a CD or a shirt, but when they went to Target, defendant only bought him snack food and drinks before going to his apartment.

After watching television and eating, [M] decided to go swimming, so he and defendant went to the pool and sat in the hot tub.  Afterwards, they went back to defendant's apartment and [M] changed his clothes and put on boxer shorts, pajama bottoms and a t-shirt.  Defendant also changed, wearing only shorts.  They ordered a pay-per-view movie and began watching the movie, each one sitting on a different couch.  About five minutes later, after [M] had moved to the floor, defendant moved beside him, pushed [M]'s pajama bottoms and boxers down and orally copulated him.  [M] was shocked and scared.

During this first incident, [M] and defendant also laid together, facing each other so that their chests and penises were

---

[1] The factual background is taken from the California Court of Appeal, Third Appellate District opinion dated December 18, 2007 and filed as Exhibit A to Respondent's answer (hereinafter the "Slip Op.")

2

1
2
touching.  [M] was moving back and forth partially by the motion of defendant's hands and partially by his own effort.  [M] also touched defendant's penis with his hands and his mouth.

3
4
5
6
Afterwards, [M] went into the bathroom and then returned to the living room where he laid down on one of the couches.  When defendant returned to the room, [M] pretended to be asleep, but defendant shook his shoulder and asked him if he was awake.  Defendant sat on the floor and urged [M] to get down on the floor with him and began rubbing [M]'s knee until [M] eventually moved to the floor.

7
8
9
At some point, [M] realized he had no clothes on and that defendant was wearing only his underwear.  [M] sat on defendant's chest and defendant put his mouth on [M]'s penis again.  Touching [M]'s bottom and hips, defendant moved [M] back and forth until [M] ejaculated.

10
11
12
13
14
Afterwards, [M] dressed himself and things appeared to be normal as if nothing had happened, although [M] was in shock and began to "freak [ ] out."  He asked to go home because he did not feel good but defendant told him it was too late, so [M] asked if they could go for a drive.  While driving, defendant told [M] that what happened never had to happen again.  [M] asked him if he had ever done that to anyone else and defendant told him no.  They returned to the apartment and defendant went to sleep in his bedroom and [M] stayed on the couch unable to sleep.

15
16
17
The next morning, [M] and defendant had breakfast and played a video game.  Later, defendant took [M] to Target where he bought him a CD and three shirts.  This time, [M] felt wrong about taking things from defendant and blamed himself for what happened.  He wanted to die.

18
19
20
21
22
23
The following day, [M] spoke to Anne Lyons, a school counselor who he trusted, and told her what defendant had done to him.  Sergeant Bielcik of the Sacramento County Sheriff's Department interviewed defendant five times from December 9 through December 19, 2003.  He denied molesting [M] in the first interview.  However, during the fourth interview, he admitted that on September 27, 2003, [M] spent the night at his apartment and that when he woke up on the living room couch, [M] was orally copulating him.  He told [M] not to do it again and later he saw [M] masturbating.  Defendant was reluctant to relate this to Bielcik in prior interviews because he "didn't think this thing was going to go this far."

24
25
B.  The Defense

26
Defendant, who was 40 years of age at the time of the trial, took the stand and denied ever molesting [M] or any other child.  He

3

testified that he had been married for two years and had been in the navy. He was a good friend of [M]'s father and promised him that he would look after his sons. As a result, defendant took the boys out of a gun and drug infested environment, gave them a home with a room of their own, and tried to look after them. Many of defendant's friends and relatives testified that he was generous with their children.

The night of September 27, 2003, when [M] asked to spend the night at defendant's apartment, they used the hot tub, [M] swam in the pool, and then they watched a movie he had rented, during which defendant fell asleep. When he awoke, his shorts were down and [M] was orally copulating him. Defendant jumped up, expressed shock, excused himself, went into the bathroom, and then went to his bedroom. A short time later, [M] entered his bedroom and asked to go for a drive. He did not want to go home but the situation was awkward. When they returned from the drive, defendant went back to bed but woke up a couple of hours later and heard the television in the living room. He got up to turn it off and saw [M] sitting on the floor masturbating.

(Slip Op. at p. 2-6.)

### III.  PROCEDURAL HISTORY

Defendant was charged with 14 counts of lewd and lascivious acts on a minor under the age of 14 years. (§ 288, subd. (a).) Counts one through six were alleged in connection with [M], counts seven to fourteen were alleged in connection with his younger brother, [D].

Defendant was first tried by a jury that deadlocked during deliberations and a mistrial was declared. As a second trial, the jury found defendant guilty of counts four, five and six and not guilty of the remaining 11 counts. The trial court sentenced him to an aggregate prison term of 12 years by imposing the upper term of eight years on count 4 and two-year consecutive terms on both counts five and six.

(Slip. Op. at p. 6-7.)

Petitioner appealed his conviction and sentence. Among the issues raised in Petitioner's direct appeal were Claims I and II. Both of these Claims were denied by the state courts.

In September 2009, Petitioner filed a federal habeas petition. In his petition, Petitioner raised the following issues: (1) he was never read his rights and the conversation with the detective was later used at trial to convict Petitioner; (2) irrelevant evidence was admitted that he

4

used methamphetamine during his first trial to "forget"; (3) evidence was improperly admitted that he possessed methamphetamine with intent to sell it; and (4) evidence that he told a detective that he possessed the drugs for sale exceeded the least adjudicated elements of being convicted of simple possession and was irrelevant to his trial.  In his first federal habeas petition, Petitioner listed the "People of the State of California" as the respondent.  On September 21, 2009, Magistrate Judge Drozd dismissed Petitioner's federal habeas petition with leave to amend because Petitioner improperly listed the People of the State of California as the Respondent.

Subsequently, Petitioner filed a first amended federal habeas petition in October 2009. The first amended petition raised one issue; specifically that his conviction was obtained in violation against the privilege of self-incrimination.  Respondent moved to dismiss the first amended habeas petition by asserting that this sole claim had not been presented to any other court.  Subsequently, Petitioner filed a second amended habeas petition.  Among the claims that Petitioner raised in that second amended habeas petition were Claims I and II as listed in <u>supra</u> Part I.  Additionally, Petitioner raised two other issues; specifically that "the court's imposing an aggravated base term and two consecutive sentences [was] based on facts not pled by the government and not admitted," (<u>see</u> Pet'r's Second Am. Pet. at p. 4.) and that "imposing upper term and 2 consecutive terms must be set aside - no single aggravating factor was established." (See <u>id.</u> at p. 5.)  Petitioned moved to dismiss all four claims raised in the second amended habeas petition asserting that all four arguments were untimely.  Ultimately, Respondent's motion to dismiss was granted in part and Petitioner's sentencing claims were dismissed as time-barred.  Respondent was then ordered to answer Petitioner's remaining two Claims (specifically Claims I and II as previously described).

Respondent filed an answer addressing Claims I and II in September 2011.

### IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  <u>See</u> 28

U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law. See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents."). In this case, the last reasoned court

decision was from the California Court of Appeal on December 18, 2007.

## V. ANALYSIS OF PETITIONER'S CLAIMS

A. Claim I

In Claim I, Petitioner asserts that "simple drug possession does not involve moral turpitude; while drug possession for sale does." (Pet'r's Second Am. Pet. at p. 4.) Petitioner argues that the trial court erred when it allowed testimony that in connection with a prior arrest, Petitioner told a detective that he possessed the drugs for sale. (See id.) The Court of Appeal analyzed this Claim as follows:

> Defendant contends his Sixth Amendment right to a jury trial and his Fourteenth Amendment right to due process were violated when the trial court admitted impeachment evidence that defendant possessed methamphetamine for sale. Because he was only convicted of simple possession of that drug, he argues that the proffered evidence turned a drug possession conviction into a crime of moral turpitude by going behind the least adjudicated elements of the conviction. Respondent contends the evidence was properly admitted as a crime of moral turpitude to impeach defendant's character for honesty and veracity (Cal. Const., art. I, § 28, subd. (d); Evid. Code, § 786) and that the error if any was harmless. We find the evidence was properly admitted.
>
> A. Background
>
> The prosecution filed an [in] limine motion to impeach defendant with evidence of two acts of moral turpitude. The first was evidence of a 1992 conviction for petty theft. The second was evidence defendant told a narcotics detective that on April 14, 1994, he possessed one-eighth ounce of methamphetamine with intent to sell it.
>
> Defense counsel objected to the proffered evidence on the grounds both offenses were remote and improper character evidence. The trial court ruled that both offenses were admissible to impeach defendant's credibility if he testified.
>
> When defendant took the stand, he admitted that he had been arrested twice, first in 1993 for petty theft and again in 1994 for possessing methamphetamine with intent to sell. As to the latter offense, he pled guilty to possession of methamphetamine. He was also cross-examined by the prosecution about these two offenses.

7

B. Analysis

On appeal, we review the trial court's ruling on the admissibility of uncharged misconduct under the deferential abuse of discretion standard. (People v. Alvarez (1996) 14 Cal.4th 155, 201.) Defendant first argues that although he was arrested for possessing methamphetamine for sale, he was only convicted of simple possession and that by granting the prosecution's motion to impeach him with the greater offense, the trial court improperly went beyond the least adjudicated elements of his conviction. Defense counsel failed to preserve this claim of error by failing to make a timely and specific objection on this ground. (People v. Wheeler (1992) 4 Cal.4th 284, 300 (Wheeler), superseded by statute on other grounds.)

Nevertheless, to forestall defendant's claims of ineffective assistance of counsel, we shall address the merits of his argument and conclude that admission of evidence of his prior misconduct, whether or not it resulted in a conviction, was admissible to impeach his credibility.

Evidence Code section 788 authorized the use of a prior felony conviction to attack the credibility of a witness. In a line of cases beginning with People v. Antick (1975) 15 Cal.3d 79, the Supreme Court carefully limited the trial court's discretion to admit such evidence. (See People v. Castro (1985) 38 Cal.3d 301, 307-308 (Castro).) However, in June 1982, the voters adopted article I, section 28 of the California Constitution (section 28) as an initiative measure.

Subdivision (f) of section 28 provides that "[any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment . . . ." In addition, subdivision (d) of section 28 provides in relevant part that "relevant evidence shall not be excluded in any criminal proceeding . . . . Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782, or 1103 . . . ."

Harmonizing these two subdivisions, the court in Castro, supra, 38 Cal.3d 301, held that section 28, subdivision (f) did not abolish the trial court's discretion under Evidence Code section 352 with respect to felony-impeachment. (Castro, supra, 38 Cal.3d at p. 313.) Moreover, due process requires that the felony conviction bear a rational relation to the witness's readiness to lie. This is shown when the felony involves moral turpitude, which the court equated with a "'readiness to do evil.'" (Id. at pp. 314-215 [sic].) The court held that to determine the presence of moral turpitude, the trial court may look only to the "least adjudicated elements of the conviction . . . ." (Id. at p. 317.)

8

However, section 28, subdivision (f) does not limit impeachment by conduct to prior felony convictions. (Wheeler, supra, 4 Cal.4th at pp. 292-294 [holding a misdemeanor conviction admissible to impeach defendant where the conduct involved moral turpitude].) "[S]ection 28(d) makes immoral conduct admissible for impeachment whether or not it produced any conviction, felony or misdemeanor . . . . Thus, impeaching misconduct now may, and sometimes must, be proven by direct evidence of the acts committed." (Id. at p. 297, fn. 7.)

The initial test for determining the admissibility of any past misconduct for impeachment purposes is the requirement of moral turpitude. Beyond that, "the latitude section 352 allows for exclusion of impeachment evidence in individual cases is broad." (Wheeler, supra, 4 Cal.4th at p. 296.) In exercising that discretion, the trial court may look to those factors traditionally deemed pertinent in this area. (Ibid.; see People v. Beagle (1972) 6 Cal.3d 441, 453-454.) Those factors include (1) the extent to which the prior conviction reflects on dishonesty, (2) the nearness or remoteness of the prior conviction, (3) whether the prior conviction is for the same or similar conduct for which the accused is on trial, and (4) whether defendant refrained from testifying. (People v. Beagle, supra, 6 Cal.3d at p. 453.)

The court in Wheeler cautioned however, that "impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (Wheeler, supra, 4 Cal.4th at pp. 296-297, fn. omitted).

In People v. Lepolo (1997) 55 Cal.App.4th 85, the court rejected the claim raised by defendant herein, that the trial court is limited to the least adjudicated elements of a prior uncharged offense when determining the admissibility of that offense to impeach the defendant's credibility. Relying on Wheeler, the court in Lepolo recognized that "[w]hen the fact that a defendant has suffered a prior *conviction* is used to impeach, anything beyond the least adjudicated elements may not be examined because problems of proof (and the confusion resulting therefrom) and unfair surprise do not exist." (Id. at p. 89.) However, when the question is whether to admit evidence of past misconduct, which did not result in a conviction, the sole test to be applied is whether "that conduct evinces moral turpitude." (Id. at p. 90; see also People v. Ayala (2000) 23 Cal.4th 225, 273 [evidence that a witness admitted he lied is admissible to impeach him].)

Here the trial court ruled that possession of methamphetamine for

sale was admissible to impeach defendant's credibility. Unlike simple possession of a controlled substance, which does not involve moral turpitude, possession of a controlled substance for sale involves moral turpitude because it demonstrates the intent to corrupt others. (Castro, supra, 38 Cal.3d at p. 317.) The evidence that defendant possessed methamphetamine for sale was therefore relevant on the question of his veracity and was admissible to impeach him. (Ibid.)

Nor do we find the trial court abused its discretion under Evidence Code section 352, which authorizes the trial court to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." As stated, in making its discretionary decision to admit or exclude a prior conviction for impeachment purposes, the trial court is guided by the factors set forth in People v. Beagle, supra 6 Cal.3d 441. (People v. Clair (1992) 2 Cal.4th 629, 654.)

The first, third, and fourth factors clearly weigh in favor of admitting the evidence. As we have found, possessing a controlled substance for sale involves a crime of moral turpitude and therefore reflects on defendant's veracity (Castro, supra, 38 Cal.3d at p. 317), the prior misconduct was not similar to the charged offenses and there was no evidence defendant used drugs during the commission of the charged offenses. Moreover, the trial court's ruling did not dissuade defendant from testifying. As to the factor of remoteness, while the misconduct occurred nine years before the charged offenses, we cannot say as a matter of law that nine years is too remote where the other factors weigh in favor of admission. (See People v. Carpenter (1999) 21 Cal.4th 1016, 1055-1056 [upholding admission of two 17-year-old convictions]; People v. Benton (1979) 100 Cal.App.3d 92, 97 [upholding admission of a conviction at least 11 years old].)

Defendant argues he was prejudiced because the misconduct did not result in a criminal conviction and therefore the jury was tempted to exact punishment for a prior uncharged crime. We disagree.

Although defendant was not convicted of possession for sale, the jury was informed that he was convicted of felony possession of methamphetamine for that offense. Thus, the possibility of jury confusion or temptation to punish defendant for that uncharged crime was eliminated.

Moreover, defendant was also subject to impeachment with his prior conviction for prior conviction for petty theft and he does not argue that this offense was improperly admitted. Any question as to whether the evidence in fact resulted in prejudice is dispelled by the jury's verdict. Although credibility was a key issue in this case,

10

> the jury convicted defendant of only three of the charged offenses while acquitting him of the remaining 11 charges involving [M] and [D], thereby demonstrating that it was able to fairly and objectively consider the evidence without being unduly prejudiced by defendant's prior act of misconduct. (People v. Watson (1956) 46 Cal.2d 818, 835.) Accordingly, we find the trial court did not abuse its discretion in ruling the evidence admissible.

(Slip Op. at p. 7-14.)

Respondent first argues that this Claim is procedurally defaulted because Petitioner failed to object to this evidence at trial. However, under these circumstances, the merits of Claim I will be analyzed. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (explaining that a district court may address the merits without reaching procedural issues where the interests of judicial economy are best served by doing so); cf. Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").

Claim I is not cognizable on federal habeas review to the extent that it asserts that the state court erred as a matter of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions"). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. See Romano v. Oklahoma, 512 U.S. 1, 12-13 (1994). "A habeas petition bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005). The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal citation omitted), the Ninth Circuit explained that:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when

> constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or prejudicial evidence constitutes due process.

Additionally, even if the trial court erred in allowing this evidence to be admitted at trial, Petitioner must show that the admission of such evidence had a "substantial and injurious effect on the jury's verdict." See Plascencia v. Alameida, 467 F.3d 1190, 1203 (9th Cir. 2006) (applying Brecht v. Abrahamson, 507 U.S. 619 (1993) harmless error analysis to claim that admission of evidence was improper).

Under California law, the trial court has "broad discretion" to admit or exclude evidence of a witness's prior misconduct involving moral turpitude for impeachment purposes. See People v. Wheeler, 4 Cal.4th 284, 295, 14 Cal. Rptr. 2d 418, 841 P.2d 938 (1992); see also People v. Castro, 38 Cal.3d 301, 306, 211 Cal. Rptr. 719, 696 P.2d 111 (1985). In this case, it was determined that the probative value of the evidence was admissible to impeach the Petitioner if he chose to testify. Petitioner's credibility was at issue, and there was a rational and constitutionally permissible inference to be drawn from the evidence, namely that Petitioner was not credible. See Wheeler, 4 Cal.4th at 297 fn. 7, 14 Cal. Rtpr. 2d 418, 841 P.2d 938 ("But section 28(d) makes immoral conduct admissible for impeachment whether or not it produced any conviction, felony or misdemeanor.") "It is clear that criminal defendants are not entitled to a false aura of veracity when they take the stand," and "[w]hen an accused elects to become a witness and testify in his own behalf, his credibility may be impeached, his testimony may be assailed, and is to be weight as that of any other witness." United States v. Portillo, 633 F.2d 1313, 1322 (9th Cir. 1980) (internal quotation marks and citations omitted). Petitioner failed to show that his due process rights were violated in the admission of this impeachment evidence.

Even assuming *arguendo* that the trial court should not have allowed this impeachment evidence to be admitted at trial, Petitioner still would not be entitled to federal habeas relief as he failed to show that it had a substantial and injurious effect on the jury's verdict. The issue of Petitioner's admission to a detective that he previously possessed methamphetamine for sale

came up briefly during the trial. During Petitioner's direct testimony, the following colloquy took place on the subject:

> Q: Now, have you ever been arrested before?
> A: Twice.
> Q: Okay. And the first time, what were you arrested for?
> A: '93 was a petty theft.
> Q: And the second time, what were you arrested for?
> A: 1994 was a possession of methamphetamine with intent to sell.
> Q: Okay. And did you plead guilty to that, to that charge about the methamphetamine?
> A: Yes sir, I did.
> Q: What was the charge you pled guilty to:
> A: It was lowered down to just a possession.

(Reporter's Tr. at p. 527-28.) On cross-examination, the issue was also only briefly raised:

> Q: And the following year, 1994, you admitted to a narcotics detective with the Sacramento County Sheriff's Department that you possessed an eighth of an ounce or an eight ball of methamphetamine for the purposes of selling it; is that true?
> A: That's true.
> Q: Now, you also testified that you plea bargained that case and you were convicted of a felony, but it was knocked down to a straight possession of methamphetamine for personal use; is that right?
> A: That's right.
> Q: Now, that never got reduced to a misdemeanor, Mr. Cole, did it?
> A: You know what, I was told that when I served my probation time that it would be – it would be reduced to misdemeanor possession. I didn't follow up on it, so I'm not – that's not what I was told. I did my probation time with no problems, and I assumed it was reduced.
> Q: So when you testified at a prior proceeding that it had been reduced to a misdemeanor, you now know, as you sit here today, that that is a felony conviction, right?
> A: No ma'am, I do not. I never heard either way if it was reduced down or not. I assumed it was since I didn't hear anything.

(Id. at p. 582-83.)

Even if it was an error to admit this evidence at trial, the brief interludes of this evidence during the course of a trial lasting several days as quoted above did not have a substantial and injurious effect on the jury's verdict. Furthermore, as previously noted, Petitioner was charged with fourteen counts of lewd and lascivious conduct upon a child under the age of fourteen.

13

However, Petitioner was only found guilty of three of the counts. The Ninth Circuit has stated, "the failure of the jury to convict on all counts is the best evidence of the jury's ability to compartmentalize the evidence." Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2004) (internal quotation marks and citations omitted). Thus, the jury was clearly able to separate this impeachment evidence from the molestation charges against Petitioner. See, e.g., Duncan v. Woodford, Civ. No. 07-4543, 2008 WL 4363266, at *10 (C.D. Cal. Sept. 23, 2008) (finding admission of unfavorable evidence was harmless in part because the jury acquitted the petitioner of some of the charges, showing that it was able to compartmentalize and separate the evidence) (citing Park, 202 F.3d at 1150). Additionally, this case included direct testimonial evidence from [M] that Petitioner sexually molested him at his residence.

Petitioner also asserts in Claim I that the admission of this evidence lowered the prosecutor's burden of proof. Petitioner's argument is without merit. The jury was specifically instructed as to the proper burden of proof. Specifically, the jury was instructed that:

> A defendant in a criminal action is presumed innocent until the contrary is proved, and in the case of reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden to prove him guilty beyond a reasonable doubt.

(Reporter's Tr. at p. 801.) The jury was also instructed as to the requisite elements that made up the charges of committing a lewd act with a child under the age of fourteen in violation of California Penal Code § 288(a). The jury is deemed to have followed these instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000). Thus, Petitioner fails to show that the admission of impeachment evidence lowered the prosecutor's burden of proof to find him guilty. Accordingly, for the foregoing reasons, Petitioner is not entitled to federal habeas relief on Claim I.

B. Claim II

In Claim II, Petitioner asserts that "evidence was totally speculative and so extremely prejudicial that it denied appellant a fundamentally fair trial." (Pet'r's Second Am. Pet. at p. 5.)

14

In support of this Claim, Petitioner asserts that "[t]his conclusion is erroneous because the absence of any objective reason to reject half of [M]'s testimony – that supporting count 1-3 - but accept that part supporting counts 4-6, implies that the improperly admitted drug use persuaded the jury that appellant had to be punished." (Id.)  The California Court of Appeal analyzed this Claim on direct appeal and stated the following:

> Defendant contends the trial court abused its discretion by admitting his statement that he used methamphetamine during the first trial to "forget."  He argues that this statement was prejudicial and requires reversal.  Respondent contends the statement was properly admitted to prove a consciousness of guilt and as a crime a moral turpitude to impeach his veracity.  We agree with defendant that the evidence was not particularly relevant to show either a consciousness of guilt or moral turpitude.  However we find under all the circumstances the error was not prejudicial.
>
> A.  Background
>
> The prosecutor moved in limine to admit evidence that defendant told his sister during a jail house visit, that he used "crank" during the prior trial because it "makes me forget."  [FN 1]  The record shows that defendant made the statement during a tape-recorded conversation with his sister in which he told her that his attorney had asked him whether "I was on crank when I was going thru that trial."  Defendant then told his sister that counsel told him "that's part of the reason we didn't do well" and that "my testimony didn't do very well."  As part of the same conversation with his sister, defendant further told his sister that the reason he didn't do well at the first trial was because he was not getting much sleep and was tired but "I wasn't high when I went into the court room."
>
> > [FN 1]  The motion states "Admit the statement made by Defendant COLE to his sister, Brenda Brocker, during a jail social visit, on November 12, 2004, admitting his use of 'crank' (methamphetamine) during the prior trial because the 'crank' 'makes me forget' . . . ."
>
> At the hearing, the prosecutor argued that the statement was relevant to defendant's credibility and to show a consciousness of guilt on the theory defendant was trying to forget what he did to the boys in 2003.  The defense argued the statement was not relevant because it could be interpreted a number of ways, including that defendant wanted to forget the strain of trial.  The court took the matter under submission, indicating it may be too prejudicial under Evidence Code section 352.

15

1   The issue was raised again at trial, when the prosecutor argued that defendant's statement to his sister was relevant to his credibility as well as to his ability to perceive and recollect the events he testified about at the first trial. The defense argued the evidence was irrelevant on the question of his veracity because it only showed possession and use of a drug, which does not involve moral turpitude and was irrelevant on the question of his ability to perceive and recollect because there was no evidence he used the drug during the day while the trial was going on. The prosecutor advised the court she was not seeking to impeach defendant with the statement under a theory of moral turpitude.

The trial court admitted the evidence finding it was relevant to show defendant was using the drug "at the time or during the time in which he testified during the former court proceeding . . . [b]ecause what his state of mind would be at the time he testified would be of relevance." The court limited the prosecutor to question whether defendant used methamphetamine when he testified during a prior court proceeding.

On cross-examination, defendant testified that he used methamphetamine during the time of the court proceeding but that he did not use it the day he testified. On rebuttal, defendant testified that when he said he took methamphetamine so it would "make [him] forget," he was referring to "forgetting . . . [about] the horrible charges that were being made against [him] and what was being done," in prosecuting him. He was trying to forget the experience of being prosecuted for things he never did and being cross-examined in front of family and friends.

Despite the prosecutor's advisement to the court, she argued to the jury that defendant's use of methamphetamine during the trial to make him forget together with his 1993 statement that he possessed methamphetamine to sell shows he had low moral character and was dishonest.

B. Analysis

"No evidence is admissible except relevant evidence." (Evid. Code § 350.) "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Evidence that leads only to speculative inferences is irrelevant. (People v. Kraft (2000) 23 Cal.4th 978, 1035.)

The evidence had little probative value. Defendant's ability to recollect and perceive at the first trial had no bearing on his ability to do so at the second trial. Nor was it particularly probative to show a consciousness of guilt. The relevancy of defendant's

16

statement depends on the strength of the inference raised by his statement, which turns on whether he was under the influence of the drug when he testified. However, as the record shows, he told his sister that counsel had asked him whether "I was on crank when [he] was going thru that trial," but qualified his statement by stating that "I wasn't high when I went into the court room."

We find this evidence has weak probative value and is ambiguous at best. Nevertheless, we need not decide whether the trial court abused its discretion by admitting the evidence because we find any error was harmless. (People v. Watson, supra, 46 Cal.2d at p. 818.) For the same reason the evidence had minimal probative value, it also had little prejudicial impact. Moreover, defendant clearly testified at the second trial that he did not use methamphetamine the day he testified at the first trial and provided an innocent explanation for his statement "it makes me forget."

Furthermore, as discussed in Part I, defendant was properly impeached with two prior acts of misconduct, including a prior conviction for petty theft. Defendant also spoke to the investigating officer four times before admitting that he had sexual contact with [M], and then came up with the implausible story that [M] initiated the contact while defendant was sleeping. Despite this evidence, the jury only found defendant guilty of three of fourteen counts of child molestations. The jury's verdict clearly demonstrates that it was able to objectively evaluate the evidence and was not prejudiced by the challenged statement. Accordingly, we reject defendant's claim of reversible error.

(Slip Op. at p. 14-18.)

The standard for determining whether a Petitioner is entitled to federal habeas relief on a claim of improper admission of evidence was previously set forth in supra Part V.A. To reiterate, the due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. See Romano, 512 U.S. at 12-13. Additionally, even if the trial court erred in allowing evidence to be improperly admitted at trial, Petitioner must show that the admission of such evidence had a "substantial and injurious effect on the jury's verdict." See Plascencia, 467 F.3d at 1203 (9th Cir. 2006) (applying Brecht harmless error analysis to claim of improper admission of evidence).

In this case, the Court of Appeal determined that any purported error in admitting this evidence was harmless and cited to People v. Watson, 46 Cal.2d 818, 299 P.2d 243 (1956). The

Ninth Circuit has stated that the <u>Watson</u> test "is the equivalent of the <u>Brecht</u> standard under federal law." See <u>Bains v. Cambra</u>, 204 F.3d 964, 971 n. 2 (9th Cir. 2000).

      Petitioner fails to show that the Court of Appeal's harmless error analysis was an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts. The record included M's testimony that Petitioner molested him. Petitioner was also impeached with evidence of prior acts of misconduct such as his prior petty theft conviction. Furthermore, as previously noted, the jury found Petitioner not guilty of eleven of the fourteen counts for which he was charged. This illustrates that the admission of this evidence did not have a substantial and injurious effect on the jury's verdict as it is evidence that the jury was able to compartmentalize the evidence as to each specific charge. Cf. <u>Park</u>, 202 F.3d at 1150 ("the failure of the jury to convict on all counts is the best evidence of the jury's ability to compartmentalize the evidence"). For these reasons, Petitioner is not entitled to federal habeas relief on Claim II as any error in admitting this evidence at trial was harmless.

## VI.  CONCLUSION

      For all of the foregoing reasons, IT IS RECOMMENDED that the Claims remaining in Petitioner's second amended petition for writ of habeas corpus (Dkt. No. 24) be DENIED.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the

event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: January 9, 2012

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE